### ST. PAUL–RAMSEY MEDICAL CENTER, INC., Plaintiff–Appellant,

v.

### Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant–Appellee.

### No. 95–3477.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1996.

Decided July 26, 1996.

Rehearing Denied Sept. 30, 1996.

---

Ronald N. Sutter, Washington, DC, argued, for Appellant.

Neil H. Koslowe, Washington, DC, argued, for Appellee.

Before LOKEN, ROSS, and HANSEN, Circuit Judges.

PER CURIAM.

Under the Medicare program, a teaching hospital's graduate medical education ("GME") costs are reimbursable or "allowable" costs. A 1986 statute changed the reimbursement methodology. To establish a base year for the new methodology, Congress directed the Secretary of Health and Human Services to "determine, for the hospital's cost reporting period that began during fiscal year 1984, the average amount recognized as reasonable under this subchapter ... for each full-time-equivalent resident." 42 U.S.C. § 1395ww(h)(2)(A). By the time the Secretary promulgated regulations implementing this directive in 1989, the three-year reopening period for finally determining 1984 GME costs under the prior regime had expired for most hospitals. The Secretary's

regulations nonetheless authorize reauditing a hospital's 1984 base year GME costs so as to exclude "nonallowable or misclassified costs." 42 C.F.R. § 413.86(e)(1)(ii)(B); *see* 53 Fed.Regs. 36,589, 36,591–92 (1988).

As a result of this reaudit process, St. Paul–Ramsey Medical Center's base-year allowable GME costs were reduced from $9,892,644 to $5,494,955. Because the 1984 reimbursement year is closed, St. Paul–Ramsey need not refund any 1984 reimbursements because of this reaudit. But St. Paul–Ramsey has been and will be adversely affected in subsequent years as a result of having its base year GME costs significantly reduced for purposes of applying the new reimbursement methodology. Therefore, like other adversely affected teaching hospitals around the country, St. Paul–Ramsey commenced this lawsuit, arguing not that *its* reaudit was flawed, but that the Secretary's reaudit regulations are invalid. The attack proceeds on three fronts—the regulations contravene the plain meaning of the statutory phrase, "recognized as reasonable under this subchapter"; alternatively, if the statute is ambiguous, the Secretary's interpretation is "patently unreasonable"; finally, the regulations violate the presumption against retroactivity.

These contentions were thoroughly considered and rejected by the District of Columbia Circuit in *Administrators' of Tulane Educ. Fund v. Shalala*, 987 F.2d 790 (D.C.Cir. 1993), *cert. denied*, 510 U.S. 1064, 114 S.Ct. 740, 126 L.Ed.2d 703 (1994). *Accord The Toledo Hosp. v. Shalala*, No. 3:94cv7080 (N.D. Ohio June 23, 1995), *appeal pending*, No. 95–3858 (6th Cir.). After carefully considering the parties' briefs and arguments and the legislative history of these complex statutes and regulations, we agree with the district court[1] that the Secretary's reaudit regulations must be upheld for the reasons persuasively stated by the D.C. Circuit in *Tulane*. The statute is ambiguous, and the reaudit regulations are not an exercise in retroactive rulemaking. While it would have been far preferable had the Secretary pro-

---

1. The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

mulgated the reaudit regulations during the three-year reopening period governing 1984 reimbursements, the substance of the regulations is clearly reasonable. As the court said in *Tulane*, 987 F.2d at 797, "The agency's belief that Congress would resist permanently ingraining misclassified and nonallowable costs in future reimbursements to health care providers can hardly be deemed unreasonable or inconsistent with the congressional purpose of erecting a new and more accurate reimbursement methodology."

The judgment of the district court is affirmed.